Kristopher P. Diulio (SBN 229399)
kdiulio@FordDiulio.com
Tyler E. Sanchez (SBN 299131)
tsanchez@FordDiulio.com
**FORD & DIULIO PC**
650 Town Center Drive, Suite 760
Costa Mesa, California 92626
Telephone: (714) 450-6830
Facsimile: (844) 437-7201

Attorneys for Plaintiff
RICHARD BLECH

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD BLECH,<br><br>        Plaintiff,<br><br>    v.<br><br>GREGORY L. GANTMAN; GLG CORPORATION, a California Corporation; DIANE LEEMON; and DOES 1-25<br><br>        Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**(1)  18 U.S.C § 1962(c) and § 1964 (CIVIL RICO);**<br><br>**(2)  18 U.S.C § 1962(d) and § 1964 (CIVIL RICO CONSPIRACY);** |

# I.   SUMMARY OF COMPLAINT

1.      Defendant Gregory Gantman ("Gantman") and his company, GLG Corporation ("GLG"), profit off extending extortionate credit, intimidating borrowers, and racketeering. Gantman and GLG offer desperate borrowers much needed capital at usurious and unlawful interest rates. Gantman and GLG know that its loans are illegal, with one-sided terms favoring only Gantman and GLG. Gantman and GLG ensure that each borrower understands that failing to pay back the extortionate loans will result in retaliation and intimidation, which are the primary tools Gantman and GLG employ to collect on their usurious and illegal loans.

2.      To further their illicit scheme, Gantman and GLG provide "investment opportunities" to complicit associates who provide the funds for Gantman and GLG's illegal loan-sharking in exchange for a piece of the illegal proceeds. Defendant Diane Leemon ("Leemon") is one such investor who provided $75,000 to Gantman and GLG so that Gantman and GLG could extend an extortionate loan to Plaintiff Richard Blech.

3.      Defendants Gantman and GLG agreed to broker $475,000 in funding for Blech. The purpose of the loan for Blech was to obtain much-needed capital for his business. Gantman and GLG took advantage of Plaintiff's desperation by making an illegal and usurious loan. GLG brokered a $400,000 loan ("WGC Loan") with White Glove Capital ("WGC"). GLG and Gantman, with the assistance and capital from Leemon, loaned Blech the additional $75,000 ("GLG Loan"). When making the loans, Defendants charged Blech nearly $100,000 upfront in usurious and illegal interests and fees. Defendants attempted to justify their illegal and improper fees by calling them "consultant fees," "origination investor fees," "due diligence investor fees," "insurance," in addition to an explicit charge for eight months prepaid of usurious 15% interest, and closing fees. This type of loan and interest over 10% per year is illegal under California law. *See* California Constitution Article 15.

4. At the time Defendants and Plaintiff entered into the loan, GLG was improperly operating as an entity suspended by the California Franchise Tax Board ("FTB").

5. The GLG Loan had a maturity date of January 13, 2016.

6. Because of the usurious interest rate and GLG FTB suspension, the GLG Loan agreement was unenforceable.

7. When Blech refused to make usurious interest payments and retained an attorney, Gantman and GLG resorted to threats and intimidation. Specifically, Gantman threatened to "make a personal visit to collect" his money.

8. Defendant Gantman followed through on his threats. Gantman—on behalf of himself and his co-conspirator Leemon—personally appeared at Blech's place of business to intimidate and threaten Blech into paying the usurious interest. Gantman threatened Blech, and physically assaulted Blech's employee, all in an effort to collect on the illegal and usurious loan.

9. Defendants Gantman, GLG, and Leemon, themselves and through their attorney, Fred Pardes, have made, and continue to make, numerous attempts to extortionately collect the usurious interest payments and loan amount in violation of the law. Each of the Defendants have conspired together as part of their scheme to make and collect on illegal loans. This lawsuit seeks damages arising from Defendants' illegal conspiracy.

## II. PARTIES

### A. Plaintiff

10. Plaintiff Richard Blech is a California citizen residing in the County of Orange, State of California.

### B. Defendants

11. Defendant Gregory Gantman is a California citizen residing in Aliso Viejo, County of Orange, State of California. Defendant Gantman facilitated the quasi-criminal enterprise of GLG, Gantman, Leemon and Doe defendants to 1) make

1  extortionate and illegal loans to Plaintiff Blech and other individuals and companies
2  desperate for funding and 2) collect payments through extortionate means of violence
3  and threats of violence. Defendant Gantman, through his alter ego company Defendant
4  GLG, made extortionate extensions of credit to Plaintiff Blech. Defendant Gantman
5  also used threats of violence and violent acts to collect payments from Plaintiff Blech.

6        12.    Defendant GLG Capital Corp. is a California corporation doing business in
7  California and engaged in or affecting interstate commerce. Defendant GLG's principal
8  place of business office in California is located at 47 Donatello, Aliso Viejo, CA 92656.
9  Defendant GLG's principal executive office is located in Seattle, Washington.
10 Defendant GLG a business through which Defendant Gantman and Leemon made an
11 extortionate extension of credit to Plaintiff Blech, and through which Defendants
12 resorted to threat of violence to collect on their illegal loans.

13       13.    Defendant Diane Leemon is a California citizen residing in, County of
14 Orange, State of California. Defendant Leemon knowingly and voluntarily provided the
15 capital funds that Defendant Gantman and GLG used to make the extortionate
16 extension of credit to Plaintiff Blech. Defendant Leemon conspired with Defendants
17 Gantman and GLG to facilitate their scheme of making illegal loans and then employed
18 illegal threats of violence to collect on those loans.

19       14.    Defendants Does 1 through 10 are presently unidentified or unknown
20 individuals or entities who have facilitated, participated, or cooperated in the unlawful
21 enterprise and scheme to make extortionate extensions of credit and use extortionate
22 means of collecting payments.

23                    III.   **JURISDICTION AND VENUE**
24       9.    This Court has original subject matter jurisdiction over this action under
25 the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964 (the
26 "RICO Act" or "RICO").

27       10.    This Court has personal jurisdiction over all Defendants and venue is
28 proper because all Defendants are residents of the State of California and within this

judicial district. GLG is a California corporation, doing business in California, with its principal place of business office in Orange County, California. Further, the acts and practices of all Defendants described here occurred in California and within this judicial district, and this Court has jurisdiction over the controversy, which arises out of that conduct.

## IV.   <u>FACTS</u>

### A. Defendants' Extortionate Extension of Credit

11.     In or around May 2015, Blech engaged Defendant GLG and its president, Defendant Gantman, to obtain $500,000 in funding for use in Blech's business. GLG brokered a $400,000 loan ("WGC Loan") with White Glove Capital ("WGC") and GLG loaned Blech the additional $75,000 ("GLG Loan"). Defendant Leemon conspired with Defendant Gantman in order to collectively provide the $75,000 loan to Blech. Each of the Defendants conspired together to make the loans knowing that the extortionate and usurious interest were illegal.

12.     Defendants Gantman and GLG, understanding Blech's immediate need for capital, agreed to loan him $75,000 but only on Gantman and GLG's onerous terms contained in the Term Promissory Note ("Note") and Security Agreement ("Agreement"). Attached Exhibits A and B are true and correct copies of the Note and Agreement.

13.     The parties executed the Note and Agreement on June 8, 2015. In exchange for the $75,000 loan, Defendants Gantman and GLG required interest payments of 1.25 percent per month, or 15 percent annually, which exceeds California's maximum interest rate of 10 percent.

14.     At the time of the loan, GLG was a FTB-suspended entity in California and could not do business in California, including entering into any contract. Defendants Gantman and Leemon were aware or should have been aware of that suspension and that the acts of GLG were improper.

15.     Defendants Gantman and GLG also charged an improper principal

reduction in the form of an origination fee of $5,000 and a closing fee of $4,600 for a total of $9,600, which resulted in net proceeds to Blech of only $65,400. Defendants deducted these charges in a transparent collection of a prepayment of usurious interest. Further, the loan required an interest payment of 20 percent in the case of any default.

16.     The loan had a maturity date of January 13, 2016 and was secured specifically by Blech's "Present and Future Receivables resulting from Borrower's mandatory annual distributions to" Blech's UBS Comerica Trust account ending in 4540 ("UBS Account").

17.     In connection with closing of the WGC Loan, Defendants Gantman and GLG also required Blech to pay GLG an exorbitant $14,000 GLG Consultant Fee from the proceeds of the $400,000 principal WGC Loan. The consultant fee was in addition to a $20,000 origination investor fee, a $12,000 due diligence investor fee, $40,000 of eight months of prepaid interest at 1.25 percent, and $936 for insurance. Of the $475,000 total loan amounts, Defendants retained a principal reduction of $96,536, approximately *20 percent* of the total principal. This usurious interest far exceeded what was permissible under California law—as Defendants, and each of them, well knew when they dictated the illegal loan terms.

18.     Based on Defendants' conduct and representations, Blech had no leverage or ability to negotiate the onerous terms or the extortionate interest rate and usurious interest prepayments. Defendants, and each of them, took advantage of Blech's desperation and need for capital for his business.

19.     On information and belief, Plaintiff alleges that Defendants made other similarly extortionate loans to other borrowers as part of its illegal pattern and scheme to make illegal and usurious loans, and then to later resort to threats of violence to collect on those loans.

**B. Defendants' Extortionate Means of Collection**

20.     In or around December 2015, Blech engaged an attorney, Daniel A. Friedlander, to review the GLG Loan. On December 16, 2015, prior to the loan maturity

1  date, Mr. Friedlander sent a letter to Defendant Gantman addressing the GLG Loan's

2  usurious interest rate.

3      21.    In or around January 12, 2016, Defendant Gantman responded by

4  threatening to make a "personal visit to collect my funds." Defendant Gantman made

5  this threat to intimidate Blech into paying illegal and usurious interest, or else face

6  violence from the hands of Defendant Gantman. When making these threats, Defendant

7  Gantman was acting for and on behalf of not only himself, but also his co-conspirators

8  Defendants GLG and Leemon. Mr. Friedlander cautioned Gantman against these threats

9  and instructed Gantman not to make any personal visits to Blech.

10     22.    On or about March 1, 2016, Defendant Gantman made good on his threat

11 to visit Blech personally at his office to collect his funds despite Mr. Friedlander's

12 express instructions. In fact, Gantman went to Blech's office yelling, threatening, and

13 physically assaulting Blech's employee, Deirdre Murphy, despite her not having any

14 role in the GLG Loan. Gantman violently grabbed Ms. Murphy's arm, threw her against

15 a wall, and chased her into her office as she called police. Gantman left the premises

16 only after seeing Ms. Murphy call the police.

17     23.    Because of his inappropriate, threatening, and violent behavior to collect

18 on a clearly usurious loan, the Orange County Superior Court issued a Workplace

19 Violence Restraining Order After Hearing ("Restraining Order") on May 10, 2016

20 against Defendant Gantman prohibiting Gantman from harassing, threatening,

21 contacting, or committing violence against Ms. Murphy and Blech. The Court also

22 instructed Gantman to stay at least 100 yards away from Ms. Murphy and Blech, their

23 work place, their vehicles, and their homes.

24     24.    On or around November 9, 2017, Defendant Gantman again tried to

25 contact Blech through his attorney, Fred S. Pardes, threatening litigation if Blech did

26 not pay him back the principal amount of $75,000 and *18 percent* interest for twenty-

27 two months for a total of $101,250.00. The interest demanded by Defendants, through

28 Mr. Pardes, was well in excess of what California law permits. Defendants, and their

attorney, each knew at the time that they were attempting to collect illegal and usurious interest. Defendants and their attorney Mr. Pardes further threatened to enforce the full default rate of 20 percent, without any mention of utilizing the "usury savings clause" to reduce the interest to the statutory maximum, in a blatant attempt to extort Blech into paying the usurious interest rate.

25.     For the first time, Defendants claimed that GLG had assigned the loan to Defendant Leemon in a blatant attempt to circumvent California law precluding FTB-suspended entities from initiating lawsuits. Neither Defendants GLG nor Gantman gave notice to Blech that GLG assigned the Note to Defendant Leemon. Between June 2015 and November 2017, Leemon was not a party to any communications with Blech or any other actions taken in regards to the GLG Loan with Blech's knowledge.

26.     On or about December 7, 2017, Blech's attorney responded to Mr. Pardes's November 9, 2017 letter stating that the loan was usurious and an unenforceable contract. Further, Blech—through his attorney—pointed out that Diane Leemon was unable to enforce the Note because there was no evidence of Gantman or GLG assigning the Note to Leemon and because GLG was an FTB suspended corporation that could not initiate or defend any claim.

## FIRST CAUSE OF ACTION
## Civil RICO 18 U.S.C. § 1962(c) and 1964
### (Against All Defendants)

27.     Plaintiff Blech incorporates by reference the allegations in paragraphs 1-26 of this Complaint as though fully set forth here.

28.     Defendants formed an enterprise, GLG, and association-in-fact enterprise with the meaning of 18 U.S.C. § 1961(4) (the "Enterprise")

29.     The Enterprise is an ongoing organization of Defendants Gantman, GLG, and Leemon associated for common and shared purposes, including: (a) conceiving and planning the extortionate scheme to extend usurious and illegal credit to Blech and other borrowers and to collect money through extortionate means, as described in

paragraphs 11-28; and (b) taking overt acts to extend to Blech, and other borrowers, extortionate credit of usurious interest and onerous terms and to collect payment through extortionate means of threats of violence and violent acts.

      a.   Defendant Gantman and GLG, on behalf of the Enterprise, entered into the illegal and usurious loan with Blech while GLG was a FTB-suspended entity. They used their representations and conduct to force Blech into accepting 1) the usurious interest rate, a of 15 percent, five percent more than the maximum interest rate allowed in California; 2) the extortionate prepayment of improper interest from principal; and 3) the onerous one sided terms of the loan.

      b.   Defendant Leemon, aware that the onerous terms and extortionate interest rate was a good "investment opportunity, knowingly and willingly agreed to provide the Enterprise with $75,000 in capital to loan to Blech to extort improper interest rates to her benefit.

      c.   Defendant Gantman, for himself and on behalf the Enterprise, threatened to make a "personal visit" to collect payment of the extortionate loan, thereby insinuating violence against Blech to extort payment.

      d.   Defendant Gantman, on behalf of the Enterprise, made a "personal visit" to Blech's place of business, threatened Blech and his employee, and physically assaulted Blech's employee to extort payment on the illegal and unenforceable loan.

      e.   Defendants, through their attorney Fred Pardes, threatened Blech with malicious prosecution to extort usurious payments on the loan.

    30.   All Defendants through the Enterprise engaged in and continue to engage in a pattern of racketeering activity comprised on the predicate acts of extending extortionate credit (18 U.S.C. § 892); willfully advancing money to another with reasonable grounds to believe that it is the intention of that person to use the money for the purpose of making extortionate extensions of credit  and wire fraud (18 U.S.C. § 893); knowingly using extortionate means to collect payment and punish Blech for nonpayment (18 U.S.C. § 893); and extortion (18 U.S.C. § 1951).

31.     The Enterprise engaged in or affected interstate commerce because GLG's executive office is located in Seattle, Washington and its principal place of business is located in Aliso Viejo, California. Further, Defendants made use of interstate wires and mail to transfer the proceeds and funding on the loan and to make threats to Blech. Further, on information and belief, Defendants' Enterprise engaged in extending extortionate loans to citizens of other states and extorting payments from citizens of other states through illegal means.

32.     Each extension of extortionate credit, advance of money to be used to extend extortionate credit, and each threat of violence or violent act to collect payment and punish nonpayment in furtherance of the scheme constitutes a separate violation and predicate act.

33.     Each Defendant in this action has engaged in two or more predicate acts as detailed above.

34.     Each Defendant agreed to conduct, and did conduct or participate in, the Enterprise's affairs through a pattern of racketeering activity. Defendants intended their activity to obtain ill-gotten proceeds through extortionate loans and means of collection. Defendants intended their activity to injure Plaintiff Blech in his property and financial interests.

35.     The predicate acts described here are related because they were committed using the same or similar methods and conduct, targeted the same or similar victims, involved the same or similar participants, and were performed for the same or similar purposes. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989). The predicate acts described here are continuous, occurring from 2015 until at least November 2017. That time period represents close-ended continuity. *Id.*

36.     By executing the scheme to extort Blech, as described above, all Defendants have participated in the scheme to extort Blech.

37.     Defendants' pattern of racketeering activity damaged Blech in the amount of $96,563 of improper prepayment of usurious interest, in an amount to be proven at

trial for legal costs associated with Defendants' extortionate means of collection, and in emotional distress associated with the Enterprises scheme of extortion.

## SECOND CAUSE OF ACTION

## Civil RICO Conspiracy 18 U.S.C. § 1962(d) and 1964

## (Against Defendants)

38.    Blech incorporates by reference the allegations in paragraphs 1-37 of this Complaint as though fully set forth here.

39.    All Defendants conspired to engage in a pattern of racketeering activity comprised on the predicate acts of extending extortionate credit (18 U.S.C. § 892); willfully advancing money to another with reasonable grounds to believe that it is the intention of that person to use the money for the purpose of making extortionate extensions of credit  and wire fraud (18 U.S.C. § 893); knowingly using extortionate means to collect payment and punish Blech for nonpayment (18 U.S.C. § 893).

40.    Defendants each agreed to facilitate all or some of the predicate acts described in paragraphs 11 through 28 and 31 here. That agreement is manifest by their knowing participation in or support of the predicate acts identified here.

41.    By planning and executing the scheme to extort Blech, as described above, all Defendants have participated in the scheme to extort Blech.

42.    As a direct and proximate result of Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiff Blech has been injured in his business and property as described above.

43.    Defendants' pattern of racketeering activity damaged Blech in the amount of $96,563 of improper prepayment of usurious interest, in an amount to be proven at trial for legal costs associated with Defendants' extortionate means of collection, and in emotional distress associated with the Enterprises scheme of extortion.

**PRAYER FOR RELIEF:**

WHEREFORE, Blech prays for judgment in its favor and against Defendants, jointly and severally, and requests that this Court award Blech the following:

A.      An award of compensatory damages in an amount to be determined at trial;

B.      An award of threefold damages sustained by Plaintiff under RICO, 18 U.S.C. § 1964(c);

C.      An award of costs and reasonable attorney fees and expenses incurred by Blech in connection with this action under 18 U.S.C. § 1964(c);

D.      Pre-judgment and post-judgment interest on the above damage awards;

E.      An order adjudging all Defendants jointly and severally liable, as the law allows, under each cause of action asserted by Blech and for all damages awarded against any Defendant;

F.      Such other relief as this Court may deem just.

Dated:  November 21, 2018          **FORD & DIULIO PC**


By: s/ Tyler E. Sanchez
      Kristopher P. Diulio
      Tyler E. Sanchez

Attorneys for Plaintiff RICHARD BLECH

## JURY TRIAL DEMAND

Plaintiff Richard Blech demands a trial by jury.

Dated:  November 21, 2018                    FORD & DIULIO PC

                                        By: *s/ Tyler E. Sanchez*
                                        _____
                                        Kristopher P. Diulio
                                        Tyler E. Sanchez

                                        Attorneys for Plaintiff RICHARD BLECH

**COMPLAINT**